**Affirmed and Memorandum Opinion filed September 14, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00310-CV

---

### IN THE INTEREST OF A.H AND H.H, Children

---

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2011-00516J**

---

## M E M O R A N D U M    O P I N I O N

This appeal is from a judgment terminating the parental rights of a father, M.J.H., to his children, A.H. and H.H. Appellant claims the evidence is legally and factually insufficient to support the termination of his parental rights under section 161.001(2) of the Texas Family Code. We affirm.

The jury found that appellant (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional wellbeing; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and/or (3) failed to comply with the provisions of a court order that specifically

established the actions necessary for him to obtain the return of the children; and (4) termination was in the best interest of the children. Tex. Fam. Code §§ 161.001(1)(D), (E), (O) and 161.001(2) (West Supp. 2012). The jury further found appellant engaged in a pattern or history of family violence. In his sole issue, appellant challenges only that the evidence is legally and factually insufficient to support the jury's finding that termination of his parental rights was in the children's best interest.

## STANDARD OF REVIEW

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code Ann. § 161.001 (West Supp. 2012); *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005); *In re U.P.,* 105 S.W.3d 222, 229 (Tex. App. -- Houston [14th Dist.] 2003, pet. denied). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In the Interest of J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id.* If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual sufficiency review, we give due consideration to evidence the factfinder could reasonably have found to be clear and convincing. *Id.* Our inquiry is

whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id*.

## BEST INTEREST

There is a strong presumption that the best interest of the child is served by keeping the child with its natural parent and the burden is on the petitioner to rebut that presumption. *In re U.P.,* 105 S.W.3d at 230. In deciding whether termination is in the best interest of A.H. and H.H., we examine several factors for each child, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, nor is evidence required on all nine factors to support terminating a parent's rights. *Id.* The same evidence of acts or omissions that support termination under section 161.001(1) may be probative in determining a child's best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App. – Houston [1st Dist.] 2008, pet. denied).

Appellant contends termination was not in the children's best interest because "he has a bond with his children and because of that bond the best-interest prong of the termination statute cannot be satisfied by clear and convincing evidence..." Appellant makes no other argument regarding best interest and does not apply the *Holley* factors to the evidence adduced in this case.

3

The children did not testify. Thus the first factor does not weigh for or against the jury's finding.

The record reflects appellant is not providing for the physical and emotional needs of his children. Appellant testified that he has not paid child support since April 2011 although he knew he was ordered to pay $325 per month. Appellant admitted that in 2011 he received a tax refund of over $8000 and was currently earning from $1250 to $1450 a month. Appellant admitted he had failed to provide adequate financial support for his children. The guardian ad litem, Pamela Fazzone, testified there has been inconsistency in his employment and in the last two and a half years he has had eight residences. Regarding their emotional needs, appellant points out in his brief that the caseworker, Tiquita Patterson, testified that he has a bond with his children. Patterson also testified that during his visits, appellant usually brings his cell phone, a video game or ipad and A.H. sits on the couch and plays with it. A.H. is not interacting with appellant. H.H. only interacted with appellant for the first ten minutes. When L.H., the mother of the children, was asked whether the children have a bond with appellant, she answered "I guess in a way they know who he is. But they don't really even ask me about him anymore." Terry Aultman, the therapist, testified the interaction between the children and appellant was very limited. Accordingly, the second factor weighs in favor of the jury's finding.

Appellant's history of family violence is evidence that he poses a present and future emotional and physical danger to his children. Patterson testified she believes appellant committed domestic violence against L.H. and that he endangered the children because there were times they were in the home when violence occurred. According to Patterson, the Department feels the damage done to L.H, the children's mother, by appellant has had an impact on A.H. Patterson testified A.H. and H.H. were present in June 2009 when appellant choked their mother. L.H.'s father testified he believed the violence was ongoing. He saw bruises that confirmed L.H. had been violently attacked on numerous occasions. L.H.'s father testified to his belief the violent relationship had affected the children. He saw them "act out" and just seeing their parents would trigger

4

their aggression to each other. When visits were discontinued, the aggression diminished. The third factor also weighs in favor of the jury's finding.

The persons seeking custody were the children's maternal grandparents. Patterson testified that based upon her observations of the grandparents with the children, they love the children and are protective of them. H.H. has lived with her grandparents for one and a half years and A.H. has lived with them for three and a half years. A.H. was five at the time of trial and H.H. was three. Patterson observed the grandmother redirecting the children appropriately when they became aggressive. After concern was expressed that the children were calling their grandmother "mom," Patterson had since heard the children refer to her appropriately. L.H. testified the children are well-adjusted to living with their grandparents. They lived there off and on for three and a half years before L.H. finally left appellant. The fourth factor weighs in favor of the jury's finding.

Patterson testified a program was available to help the grandparents get aid for children and the grandparents trained to be licensed foster parents to obtain additional monetary assistance. If the family qualified, the grandparents would be able to get educational assistance and medical insurance for the children. The grandfather testified they were financially able to care for the children. Therefore the fifth factor also weighs in favor of the jury's finding.

The children's grandparents can provide a suitable and permanent home. Their grandfather was a project engineer with the space program from 34 years and has been unemployed since September 2011. He testified that was not his only source of income. Their grandmother is a realtor. Both children have been in therapy since 2010. Their grandfather testified he believed it was helping them. Fazzone, testified that Child Advocates recommends the children remain with the grandparents. The sixth and seventh factors weigh in favor of the jury's finding.

There was evidence indicating the existing parent-child relationship is not appropriate. Appellant once claimed, and then recanted, that A.H. had performed oral sex upon him three times. Also, there was an outcry by A.H. that appellant "had hurt her

5

pee-pee." L.H. testified that in 2010, appellant was holding H.H. when she bit him. Appellant "jolted her back and shook her and stood up over the crib and put her over it and kind of dropped her in there." Patterson did testify that during visitations appellant's interactions with the children were appropriate. Overall, the eighth factor weighs in favor of the jury's finding.

Finally, we consider any excuses for appellant's conduct. Appellant attempted to excuse his violent behavior by blaming it on the children's mother. According to Patterson, appellant has indicated his only fault was in staying with L.H. because she is bi-polar. Fazzone testified that appellant refused, in the last year, to participate in individual therapy. She further testified he has not accepted any responsibility. The last factor also weighs in favor of the jury's finding.

## CONCLUSION

We find the evidence presented at trial was of such a degree that would produce in the mind of the jurors a firm belief or conviction that termination was in the children's best interest. Accordingly, the jury's determination that terminating appellant's parental rights is in the best interest of A.H. and H.H. is supported by legally and factually sufficient evidence. Appellant's issue is overruled and the judgment of the trial court is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Boyce, Christopher, and Jamison.